John G. Balestriere
Matthew W. Schmidt
**BALESTRIERE FARIELLO**
225 Broadway, 29th Floor
New York, New York 10007
Telephone:    (212) 374-5421
Facsimile:    (212) 208-2613
john.balestriere@balestrierefariello.com
matthew.schmidt@balestirerefariello.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **DANIEL PRESTI** and **LOUIS GELORMINO**,<br><br>                    Plaintiffs,<br><br>- against –<br><br>**CITY OF NEW YORK, BILL de BLASIO, MAYOR OF NEW YORK CITY, (in his official capacity), OFFICE OF THE SHERIFF OF THE CITY OF NEW YORK,** Sheriff **JOSEPH FUCITO (individually and in his official capacity),** Sergeant **KENNETH MATOS (individually and in his official capacity),** Sergeant **RICHARD LEBLOND (individually and in his official capacity),** Sergeant **FURNEY CANTEEN (individually and in his official capacity),** Deputy Sheriff **MATT ANSELME (individually and in his official capacity),** and **Deputy Sheriff RUESHIEM JONES (individually and in his official capacity),** and other **DOES 1–10,**<br><br>                    Defendants. | Case No. __1:21-cv-03811__<br><br>**COMPLAINT**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiffs Daniel Presti ("Presti") and Louis Gelormino ("Gelormino"), by their

attorneys Balestriere Fariello, for their Complaint against Defendants the City of New York (the "City"), Mayor Bill de Blasio in his official capacity ("de Blasio"), Sheriff Joseph Fucito in his individual and official capacity ("Fucito"), Sergeant Kenneth Matos in his individual and official capacity ("Matos"), Sergeant Richard LeBlond in his individual and official capacity ("LeBlond"), Sergeant Furney Canteen in his individual and official capacity ("Canteen"), Deputy Sheriff Matt Anselme in his individual and official capacity ("Anselme"), Deputy Sheriff Rueshiem Jones in his individual and official capacity ("Jones"), and Does 1–10 (de Blasio, Fucito, Matos, LeBlond, Anselme, Jones, and Does 1–10, collectively, the "Individual Defendants"; Fucito, Matos, LeBlond, Anselme, Jones, and Does 1–10, collectively, the "Police Defendants").

## PRELIMINARY STATEMENT

1. Presti and Gelormino bring this action for compensatory damages, punitive damages, and attorneys' fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of their civil rights, as said rights are secured by said statutes and the Constitutions of the State of New York and the United States. Plaintiffs are also asserting supplemental State law tort claims.

## JURISDICTION

2. Pursuant to 42 U.S.C. § 1983, this Court has jurisdiction to enforce the provisions of the U.S. Constitution.

3. Pursuant to 42 U.S.C. § 1988, this Court has jurisdiction to enforce the protection of all persons of their civil rights in the U.S.

4. Pursuant to 28 U.S.C. §§ 1331 and 1343, this Court has subject matter

jurisdiction over the claims asserted by Plaintiffs as this action is brought to redress deprivations under the color of State law, statute, executive order, ordinance, regulation, custom, or usage of rights, privileges, and immunities secured by the U.S. Constitution.

5. Under 28 U.S.C. § 1367, this court has supplemental jurisdiction over New York State law claims as the claims are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the U.S. Constitution.

6. Within ninety days after the claim herein accrued, Presti and Gelormino each duly served upon, presented to, and filed with the City of New York, a Notice of Claim setting forth all facts and information. This action was commenced within one year and ninety days after the cause of action herein accrued.

**VENUE**

7. Venue is proper in the Eastern District of New York, under U.S.C. § 1391(b), as the events giving rise to claims set forth in the Complaint have occurred in this district.

**PARTIES**

8. Plaintiff Daniel Presti is a citizen of the U.S., and at all relevant times a resident of the City and State of New York.

9. Plaintiff Louis Gelormino is a citizen of the U.S., and at all relevant times a resident of the City and State of New York.

10. Defendant the City of New York is and was a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

Defendant the City of New York maintains the New York City Sheriff's Office ("NYSO"), a duly organization public authority.

11. Defendant Bill de Blasio is and was the Mayor of the City of New York and is and was acting under color of City law and in his official capacity, at all times relevant to the allegations made by Plaintiffs herein. De Blasio's principal place of business is at City Hall, New York, New York 10007.

12. Defendant Joseph Fucito is and was the Sheriff of the Office of the Sheriff of the City of New York and is and was acting under color of City law and in his official capacity, at all times relevant to the allegations made by Plaintiffs herein. Fucito's principal place of business is located at 3030 Third Avenue, 2nd Floor, Bronx, New York 10455.

13. Defendant Kenneth Matos is and was a sergeant at the Office of the Sheriff of the City of New York and is and was acting under color of City law and in his official capacity, at all times relevant to the allegations made by Plaintiffs herein. Matos's principal place of business is located at 3030 Third Avenue, 2nd Floor, Bronx, New York 10455.

14. Defendant Richard LeBlond is and was a sergeant at the Office of the Sheriff of the City of New York and is and was acting under color of City law and in his official capacity, at all times relevant to the allegations made by Plaintiffs herein. LeBlond's principal place of business is located at 3030 Third Avenue, 2nd Floor, Bronx, New York 10455.

15. Defendant Furney Canteen, is and was a sergeant at the Office of the Sheriff

of the City of New York and is and was acting under color of City law and in his official capacity, at all times relevant to the allegations made by Plaintiffs herein. Canteen's principal place of business is located at 3030 Third Avenue, 2nd Floor, Bronx, New York 10455.

16. Defendant Matt Anselme is and was a deputy sheriff at the Office of the Sheriff of the City of New York and is and was acting under color of City law and in his official capacity, at all times relevant to the allegations made by Plaintiffs herein. Anselme's principal place of business is located at 3030 Third Avenue, 2nd Floor, Bronx, New York 10455.

17. Defendant Rueshiem Jones is and was a deputy sheriff at the Office of the Sheriff of the City of New York and is and was acting under color of City law and in his official capacity, at all times relevant to the allegations made by Plaintiffs herein. Jones's principal place of business is located at 3030 Third Avenue, 2nd Floor, Bronx, New York 10455.

18. Does 1–10 are fictitious parties which Plaintiffs believe are also responsible for causing harm to them and will be discovered in litigation. Does are a persons under 18 U.S.C. § 1961(3).

## STATEMENT OF FACTS

*The December 1 Incident*

19. On December 1, 2020, at approximately 6:20 p.m., Presti was at the restaurant where he was general manager, Mac's Public House ("Mac's") at 130 Lincoln Avenue, Staten Island, New York 10306 (the "December 1 Incident").

5

20. Presti and his attorney Gelormino, an experienced Staten Island attorney, were peacefully speaking with two of Presti's friends at a table at Mac's when approximately 20 sheriff deputies, the Police Defendants, arrived at Mac's and began aggressively speaking to Presti and his clientele, demanding that Presti's clientele leave, and demanding identification from Presti, Mac's staff, and Gelormino.

21. Gelormino instructed Presti and Presti's clientele to remain calm and cooperate with the sheriff deputies.

22. When the Police Defendants continued to be aggressive towards Presti, despite meeting no resistance, Gelormino began recording the incident via his phone.

23. Upon noticing Gelormino's recording, one of the Police Defendants, a sergeant, began acting hostile towards Gelormino and demanded his identification. Gelormino asked to leave the premises at least twice and both times the Police Defendants blocked his way and said he was not allowed to leave.

24. Gelormino provided his identification to the sergeant and was subsequently detained at Mac's for approximately 90 minutes. During this time, a large crowd of onlookers gathered outside Mac's, many of whom had personal or professional relationships with Gelormino, including current and potential future clients.

25. The Police Defendants' treatment and holding of Gelormino embarrassed Gelormino in front of his clients and acquaintances, causing him mental harm.

26. After the December 1 Incident, despite acting peacefully, cooperating with law enforcement, and encouraging Presti and Presti's clientele to cooperate with law enforcement, Gelormino was issued three criminal court summons for misdemeanors.

27. After an hour and a half of issuing summons, the sheriffs handcuffed Presti and escorted him to the Richmond County Sheriff's Office at 350 St. Marks Place, Staten Island, New York 10301 (the "Sheriff's Office").

28. At the Sheriff's Office, Presti was held for two hours before being released with a criminal summons.

29. The criminal summons issued to Plaintiffs as a result of the December 1 Incident were dismissed then subsequently reinstated for both Plaintiffs. This is unusual and suggests singling out of Plaintiffs.

30. Both Plaintiffs have suffered damages within their communities from media reports on the summonses.

*Continued Harassment of Presti*

31. After the December 1 Incident, despite the fact that Presti had only been given a criminal summons and a judge had not yet presided over Presti's case, some or all of the Police Defendants blocked the entrance to Mac's for two days, from December 3, 2020, to December 4, 2020 (the "Sheriff's Blockade").

32. As a result of the Sheriff's Blockade, Presti was unable to serve his clients and earn a living.

33. Finally, on December 4, 2020, Presti, Presti's business partner, and Presti's lawyers met with the Chief Deputy Sheriff and discussed the Sheriff Blockade impeding Presti from conducting any business (the "December 4 Meeting"). The Chief Deputy Sheriff told Presti that the Sheriff Blockade at Mac's was due to the Chief Deputy Sheriff's duty to impose the orders of the courts, even though the court had not yet issued any

decision on any of the underlying criminal summons.

34. While Presti was at the meeting speaking with the Chief Deputy Sheriff, he was alerted by his staff that there was an attempted break-in at Mac's.

35. Video footage has since shown that a seemingly inebriated or mentally ill individual attempted to enter Mac's and heavily damaged the premises, leaving a trail of glass and blood.

36. Video footage also shows two men dressed in black with ski masks covering their faces standing behind the intruder, seemingly supervising his actions.

37. After the December 4 Meeting, the Sheriff Blockade left, and Presti was allowed to reopen Mac's.

38. Presti reopened Mac's on December 4, 2020 and continued business as usual until December 5, 2020.

39. After working a full day on December 5, 2020, Presti and his staff closed Mac's at 10:00 p.m., and cleaned until 12:15 a.m. that evening.

40. After Presti and his staff were finished cleaning, they all left Mac's together and walked towards their cars; Presti's car was the farthest, requiring him to walk alone.

41. Once Presti was alone he heard from behind him someone yell his last name.

42. When Presti turned around, he saw two men—later discovered to be members of the Police Defendants—dressed in all black approaching him.

43. Presti, after the earlier violent incident at Mac's, and afraid of other violent incidents, ran in fear of his life to the safety of his car.

44. The two men did not identify themselves and chased after Presti.

45. When Presti started his car and tried to drive away, one of the men jumped on the hood of his car.

46. Presti, fearing for his safety and believing that these two men were planning to cause him harm, drove away.

47. After Presti started driving, an unmarked car, driven by members of the Police Defendants, attempted to ram Presti's car from a perpendicular street.

48. The Police Defendants eventually rammed Presti's car and Presti was then pulled out of the car.

49. At that moment, the men chasing him and the individuals who had attempted to hit Presti's car—once successfully—identified themselves as New York City Sheriffs (all individuals at issue are members of the Police Defendants).

50. Presti was handcuffed and taken to Precinct 122 at 2320 Hylan Boulevard, Staten Island, New York 10306, where he was placed in a holding cell.

51. Presti was held at Precinct 122 and processed. He was then transported to the Richmond County Criminal Court and held for arraignment. He was then arraigned and released on his own recognizance.

52. The case was adjourned for several months. Following the arraignment and before his next Court date, the matter was presented to the Richmond County Grand Jury, where Presti testified.

53. There was no true bill on all criminal charges related to the motor vehicle incident. Presti was indicted on the Administrative Code misdemeanor charges related

to serving alcohol without a valid license, which remains pending.

*Police Defendants Defame Presti*

54. On December 7, 2020, Fucito declared that Presti broke a deputy's legs when Presti drove away after one of the Police Defendants jumped on the front of his car.

55. On the same day, The New York Post reported how Gelormino denied that Presti broke the deputy's legs, calling Fucito's statement an "outrageous, outright lie."

56. Fucito, also on December 7, 2020, confirmed to The New York Post that the deputy actually suffered *fractures* to both legs—not necessarily that Presti broke both of a police officer's legs.

57. Fucito injured Presti in his profession—causing a loss of business and support in public opinion—by charging plaintiff with the serious crime of breaking or fracturing a police officer's legs. Presti was not responsible for any of these injuries, assuming they even occurred at all.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Deprivation of Federal Rights Under 42 U.S.C. § 1983, Against All Defendants**

58. Plaintiffs repeat and reallege every allegation above.

59. All of the aforementioned acts deprived Plaintiffs of the rights, privileges, and immunities guaranteed to citizens of the U.S. by the Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution and in violation of 42 U.S.C. § 1983.

60. The acts complained of were carried out by Defendant in its capacity as overseeing New York City sheriff deputies, with all actual and apparent authority

attendant thereto.

61. Defendant, while acting under color of state law, engaged in conduct which constituted a custom, usage, practice, procedure or rule of the respective municipality and authority, which is forbidden by the Constitution of the U.S.

62. The acts complained of deprived Plaintiffs of their rights:

   a. To not be deprived of liberty without due process of law;

   b. To be free from seizure and arrest not based upon probable cause;

   c. To be free from unwarranted and malicious criminal prosecution;

   d. To not have summary punishment imposed on him; and

   e. To receive equal protection under the law.

## SECOND CAUSE OF ACTION
**False Imprisonment Under New York State Law, Against All Defendants**

63. Plaintiffs repeat and reallege the allegations set forth herein.

64. Plaintiffs were falsely imprisoned and their liberty restricted for an extended period of time, were put in fear for their safety, and humiliated as a result of Defendants not allowing them to leave Mac's for approximately an hour and a half, arresting Plaintiff after the December 1 Incident, and in the case of Presti, again arresting him and holding him in jail overnight as a result of the December 1 Incident.

65. Plaintiffs were conscious of said confinements and did not consent to it.

66. The confinements of Plaintiffs were without probable cause and was not otherwise privileged.

67. As a result of the aforementioned conduct, Plaintiffs have suffered mental

injury together with embarrassment, humiliation, shock, fright, and loss of freedom.

### THIRD CAUSE OF ACTION UNDER NEW YORK LAW
**Negligent Hiring/Training/Supervision/Retention, Against the City of New York**

68. Plaintiffs repeat and reallege the allegations set forth herein.

69. The City of New York, selected, hired, trained, retained, assigned, and supervised all members of the NYSO.

70. The City of New York was negligent and careless when it selected, hired, trained, retained, assigned, and supervised all members of the NYSO.

71. Due to the negligence of the City of New York, Plaintiffs suffered mental injury together with embarrassment, humiliation, shock, fright, and loss of freedom.

### FOURTH CAUSE OF ACTION
*Monell* **Claim Against the City of New York**

72. Plaintiffs repeat and reallege the allegations made above as it set forth herein.

73. The City of New York has engaged in a longstanding and pervasive pattern of constitutionally offensive conduct and the repeated abuse of their positions in government.

74. By reason of the foregoing, the City of New York has engaged in an official policy, practice, and custom which were in furtherance thereof, and has deprived Plaintiffs of the rights, remedies, privileges, and immunities guaranteed to every citizen of the United States and were in violation of 42 U.S.C. § 1983, and has deprived Plaintiffs of their rights as guaranteed by the 4th, 5th, and 14th Amendments to the United States Constitution.

## FIFTH CAUSE OF ACTION
**Defamation Per Se Against Fucito, individually and in his professional capacity, on Behalf of Presti**

75. Plaintiffs repeat and reallege the allegations made above as it set forth herein.

76. Fucito defamed Presti through the December 7, 2020, press conference where the Fucito falsely stated that Presti broke and fractured a policy officer's legs.

77. This statement was, as Fucito knew or should have known at the time, false—Presti never caused the injuries in question.

78. Fucito published his false statement by holding a press conference, which was later reported in numerous media outlets including the New York Post and the New York Daily News.

79. Fucito's false statements lacked privilege or authorization.

80. Fucito's false statements constituted defamation per se because they accused Presti of a serious crime, including but not limited to a Class C felony.

81. Fucito's false statements also constituted defamation per se because they are the type to injure Presti in his trade, business, and profession.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment as follows:

A. Compensatory damages in an amount to be determined at trial;

B. Punitive damages in an amount to be determined at trial;

C. An award of reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, as well as costs and disbursements; and

D. Any further relief as the Court may find just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury for all issues so triable in this action.

Dated: New York, New York
July 7, 2021

By:_____
John G. Balestriere
Matthew W. Schmidt
**BALESTRIERE FARIELLO**
225 Broadway, 29th Floor
New York, New York 10007
Telephone: (212) 374-5421
Facsimile: (212) 208-2613
john.balestriere@balestrierefariello.com
matthew.schmidt@balestirerefariello.com
*Attorneys for Plaintiff*